RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 11/2/11
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MICHAEL TROY LAFLEUR | : | DOCKET NO. 2:10-1537 |
| VS. | : | JUDGE TRIMBLE |
| SHERIFFS DEPT. OF CALCASIEU PARISH | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment or, in the Alternative, A Partial Summary Judgment" (R. #24) wherein, the remaining defendants seek dismissal pursuant to Federal Rule of Civil Procedure 56 and 12 because (1) plaintiff was convicted for resisting arrest and cannot be held liable for injuries that occurred while he was resisting a lawful arrest, (2) there are no facts or evidence that Sheriff Tony Mancuso was deliberately indifferent to the alleged constitutional violations, (3) Officer Melendy played no role in the actual arrest of plaintiff.

### FACTUAL STATEMENT

This lawsuit involves the arrest of plaintiff during which he alleges that police officers used excessive force and/or assaulted and battered him causing severe injuries. Most of the facts are disputed. What is not disputed is the fact the plaintiff was arrested or taken into custody. Plaintiff was charged with disturbing the peace and resisting arrest. It is also disputed as to whether or not plaintiff's conviction of resisting arrest is final, and if so, whether or not the principles of <u>Heck v. Humphrey</u>,[1] bars plaintiff's recovery for injuries that occurred while he was allegedly resisting arrest.

---

[1] 512 U.S. 477, 114 S.Ct. 2364 (1994).

On or about September 12, 2009, around 2:30 a.m., Todd Ory, a deputy/ Sergeant for the Calcasieu Parish Sheriff's Office ("CPSO") was awakened by someone riding a four-wheeler in a vacant lot adjacent to his home. He drove his unmarked CPSO unit around the block until he found who he thought was the driver; Mr. Ory alleges plaintiff, Michael LaFleur, was the driver and that when he confronted Mr. LaFleur, he was met with hostility and profanity and that it was evident that Mr. LaFleur had been drinking. In order to bring the situation under control, Mr. Ory alleges that he left Mr. LaFleur's home and radioed for a marked unit to take over the investigation. When several deputies arrived shortly thereafter, it is alleged that they were immediately met with loud profane language by Mr. LaFleur. After repeated attempts to calm him down, Deputy Lognion told Mr. LaFleur that he was being placed under arrest for disturbing the peace. It is alleged that Mr. LaFleur resisted arrest when Deputy Lognion attempted to place him in handcuffs which resulted in other officers assisting in the arrest. During the struggle, Mr. LaFleur fell to the ground and injured his leg.

Mr. LaFleur recounts a very different picture. He alleges that Mr. Ory came to his house in a tee shirt and pajamas, and in a very aggressive manner, used hostile and foul language towards him and an acquaintance, Ricky Church. After being berated by the officer, Mr. LaFleur alleges that at least four (4) CPSO units arrived at his home and that he was attacked by several officers called out by Sgt. Ory. Mr. LaFleur alleges that during the attack, he was severely injured. Mr. LaFleur alleges that he never left his property, and that Sgt. Ory and his "posse" were the aggressors acting in their capacity as Calcasieu Parish Sheriff's Office employees.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be

---

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6] Anderson, 477 U.S. at 249.

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[8] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

granted."[9]

## LAW AND ANALYSIS

*Sheriff Tony Mancuso*

Defendants maintain that the claims against Sheriff Tony Mancuso must be dismissed because there are no facts or evidence to support plaintiff's allegations that Sheriff Mancuso was deliberately indifferent to the alleged constitutional violations. The CPSO cannot be held liable under § 1983 on the basis of respondeat superior.[10] Municipalities and other local governmental bodies are "persons" within the meaning of § 1983.[11] However, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.[12] Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the injury.[13] The "official policy" requirement was intended to distinguish acts of the *municipality* from the acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible.[14] Thus, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[15] "Official policy" often refers

---

[9] Anderson, 477 U.S. at 249-50.

[10] 436 U.S. 658, 692, 98 S.Ct. 2018, 2037 (1978).

[11] Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2037 (1978).

[12] Id. at 692, 98 S.Ct. at 2036.

[13] Pembaur v. Cincinnati, 475 U.S. 469, 480-481, 106 S.Ct. 1292, 1298-1299 (1986).

[14] Id.

[15] Monell, 436 U.S. at 694, 98 S.Ct. at 2038.

4

to formal rules or understandings–often but not always committed to writing–that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.[16] Therefore, Plaintiff must demonstrate that the municipality was the "moving force" behind the injury alleged.[17] Plaintiffs have failed to show that the CPSO adopted or promulgated a custom or policy that was the driving force behind the Officers' alleged violation of constitutional rights. Plaintiff has failed to provide summary judgment evidence to create a genuine issue of material fact for trial of a government policy or custom that caused plaintiff's alleged constitutional violation. Accordingly, the section 1983 claims against Sheriff Tony Mancuso will be dismissed with prejudice, reserving plaintiff's state law claims under Louisiana Civil Code article 2315.

*Defendant L. Melendy*

Defendant Melendy maintains that the claims against him must be dismissed because he played no role in the actual arrest of plaintiff. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."[18] Liability under section 1983 for a supervisor may exist based either on personal involvement in the constitutional deprivation or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[19] Plaintiff has failed to establish a genuine issue of material fact for trial as to defendant Melendy's participation with respect to Mr. LaFleur's arrest, nor has plaintiff presented any evidence that

---

[16] Pembaur v. City of Cincinnati, 475 U.S. at 480-481.

[17] Id.

[18] Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[19] Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

Melendy participated as a supervisor. Accordingly, the claims against Melendy will be dismissed.

*Plaintiff's claims against the remaining defendants*

Defendants maintain that Mr. LaFleur's conviction to resisting arrest is a bar to his recovery of damages. Defendants rely on Heck and its progeny for the proposition that a defendant who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted.

In Heck v. Humphrey,[20] the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."

Mr. LaFleur was convicted by state district court Judge Davis on June 2, 2011[21] for disturbing the peace by offensive language and resisting an officer. He was sentenced on June 3, 2011. Louisiana Code of Criminal Procedure article 914 allows thirty days from the date of conviction for a defendant to give notice of intent to seek a writ of review. Defendants maintain that Mr. LaFleur failed to timely file his Notice of Intent. Instead, he filed an untimely Notice of Intent on July 7,

---

[20] 512 U.S. 477, 487, 114 S.Ct. 2364 (1994).

[21] Plaintiff's counsel remarks in his supplemental opposition brief, (R. #26) that Mr. LaFleur's criminal attorney, Mr. Ward, made an oral motion in open court on June 2, 2011 to file a writ. p. 6.

6

2011, more than thirty days from the date of conviction. Hence, the Notice of Intent is invalid. Defendants argue that because the Notice of Intent is invalid, the conviction is final and Mr. LaFleur is barred by Heck from recovering damages.

Defendants also remark that Judge Davis failed to recognize the delinquent nature of the filing and in error accepted the late Notice of Intent to seek writs which gave Mr. LaFleur until August 8, 2011 to submit his writ application to the Third Circuit Court of Appeal. Defendants submit that as of September 27, 2011, the Third Circuit Court of Appeal had no record of anything being filed in this matter.[22] On October 3, 2011, plaintiff's criminal attorney filed a Request for Extension of Time to File Application for Supervisory Writs.[23] On October 11, 2011, Judge Davis granted an extension of time to file a writ application to the Third Circuit Court of Appeal.[24] Defendants have submitted a certified copy of a recent order, dated October 25, 2011, which vacates the previous ruling that granted plaintiff's extension to file a writ.[25][26] Thus, defendants maintain that Mr. LaFleur cannot establish that his conviction has been reversed.[27]

---

[22] Defendants' exhibit 5.

[23] Plaintiff's exhibit B.

[24] Defendants' exhibit B.

[25] Defendants' exhibit A, attached to the Supplemental Memorandum in Response. (R. #38).

[26] The Order provides as follows: **"IT IS ORDERED** that the October 2011 order of this Court permitting an extension of the return date for the defendant to file a supervisory writ of review with the Third Circuit Court of Appeal is **HEREBY VACATED** because the extension was requested after the original return date had already passed. **THUS DONE AND SIGNED** this 25th day of October, 2011."

[27] See Trice v. Modesto City Police Dept., 2009 U.S. Dist. LEXIS 4523 (E.D. Cal. Jan. 13, 2009).

7

This court is not convinced that a final judgment of conviction for resisting arrest would conclusively bar a § 1983 claim of excessive force in this particular case. In Nelson v. Jashurek,[28] a similar case, the court held that "there undoubtedly could be "substantial force" which is objectively reasonable and "substantial force" which is excessive and unreasonable."[29] With this in mind, the court opined that a finding that a defendant officer used excessive "substantial force" would not imply that the arrest was unlawful, and thus the Supreme Court's example of how Heck v. Humphrey can bar a civil action is not applicable. The Jashurek court explained that the "Supreme Court [in Heck] intended to demonstrate that a civil suit for an unreasonable seizure predicated on a false arrest would be barred so long as a conviction for resisting the same arrest remained unimpaired."[30] In Jashurek, the court distinguished the case because the plaintiff did not allege that defendant falsely arrested him. Instead, plaintiff charged that defendant effectuated a lawful arrest in an unlawful manner. Thus, the court concluded that a judgment in plaintiff's favor would not "throw the validity of his conviction into doubt."[31] In reaching this conclusion, the court also relied on Simpson v. City of Pickens,[32] which held that even if a defendant in a criminal action was convicted validly of resisting arrest, the criminal defendant was not necessarily barred from bringing

---

[28] 109 F.3d 142 (C.A.3 Pa. 1997).

[29] Id., at 145.

[30] Id.

[31] Cf. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)("Because a successful section 1983 action for excessive force would not necessarily imply the invalidity of Smithart's arrest or conviction [for assault with a deadly weapon during a traffic stop], Heck does not preclude Smithart's excessive force claim.")

[32] 887 F.Supp.126 (S.D. Miss. 1995).

a section 1983 excessive force action under the Fourth and Fourteenth Amendments because 'it is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him.'[33]

In the instant case, the facts surrounding the alleged attack on Mr. LaFleur's person and the actual arrest are in dispute. In his deposition, Mr. LaFleur testified that:

Q. What happened next?

A. I had a deputy come at me, at that time.

Q. Do you know his name?

A. No, I do not.

Q. Was he in uniform?

A. Yes.

Q. Had he gotten out of a marked unit?

A. Yes.

Q. Go ahead, I'm sorry. Tell me what happened.

A. He came at me. He did not walk up to me. He proceeded to tackle me.

Q. So, he walked up to - -

A. After Ory instructed him - -

Q. "Get him," is what you said, right?

A. Exactly.

Q. So, one officer walked up to you and tackled you in your driveway?

A. Correct.

---

[33] Id. At 129.

9

Q. On the concrete?

A. No.

Q. I'm sorry, your driveway is not made of concrete?

A. Once he approached me and grabbed me, I grabbed him, and proceeded to go to the yard, so I would not get tackled on the concrete.

Q. So, one deputy tried to tackle you, you grabbed him and you kind of tusseled [sic] him over toward the grass?

A. Correct.

Q. One deputy comes at you. What did the other deputies do?

A. I feel two more jump on me once I got to the grass, and that's when we fell and I felt my leg break.

Q. So, you are pretty sure that your leg was injured, pretty much, at the time you hit the ground?

A. I'm sure, yes.

Q. It didn't happen in the car on the way to the hospital, didn't happen at the Sheriff's Department, didn't happen while you were riding the bike, it happened as you were falling to the ground?

A. As I was falling to the ground, that's correct.

Q. Did anyone ever say, "You're under arrest"?

A. No, sir.

Q. Did anyone ask you your name or anything like that?

A. No, sir.

10

> Q. While you were on the ground, were they able to get your hands behind your back and cuff you?
>
> A. Yes.
>
> Q. Did you let them cuff you?
>
> A. Had no choice.
>
> Q. What happened after you were handcuffed?
>
> A. I told them to get me up, that they broke my leg.[34]

The sheriff's deputy who initially effected the arrest tells a vastly different story. Upon arrival, Sgt. Lognion testifies to the following:

> Q. All right. After he tells you to get off his property, did you get off his property?
>
> A. No.
>
> Q. What did you do next?
>
> A. Started speaking to him in reference to the complaint that we were called on.
>
> Q. All right. What did he tell you about that?
>
> A. He advised me it was his property and he could do whatever he wanted to.
>
> * * *
>
> Q. So you were called out because he was mud-riding in the truck?
>
> A. I was called out in reference to noise.

---

[34] R. #24-18, LaFleur depo., pp. 54-56.

11

Q. All right. So you tried to calm him down?

A. Yes.

Q. Eventually, did you arrest him?

A. Yes.

\* \* \*

Q. Okay. Let's not worry about charges. At what point did you decide to arrest him?

A. He refused to calm down. He was very belligerent, screaming, hollering, cursing, disturbing the peace of the neighborhood.

\* \* \*

Q. At some point, you decide to arrest Mr. Lafleur?

A. Yes.

Q. Did you read him his rights?

A. I don't recall.

Q. Who dealt with Mr. Lafleur with you?

A. Kevin Fontenot.

Q. Did Mr. Fontenot read him his rights?

A. I don't' recall.

Q. Eventually, you decide to arrest him, correct?

A. Correct.

Q. And you tried to handcuff him?

A. Correct.

12

Q. Tell me what happened then.

A. I advised him he was under arrest. I grabbed his arm to handcuff him. He pulled away from me and told me, "No."

Q. Did you tell him what he was being arrested for?

A. Yes.

Q. And what was that?

A. Disturbing the peace.

* * *

Q. All right. So did you eventually get him handcuffed?

A. Yes.

Q. You by yourself?

A. No.

Q. All right. Who else?

A. Kevin Fontenot assisted, and Sergeant Ory assisted.

Q. All right. Tell me, how did y'all get him handcuffed?

A. I had him in an escort position by his - - one of his arms. I don't recall left or right. Kevin Fontenot had him in an escort position by the opposite arm. We escorted him off of the concrete driveway onto the grass, where we laid him down onto his stomach in attempts to handcuff him, at which time he continued to resist with us, not allowing us to handcuff him. We eventually gained control of both arms and were able to handcuff him behind his back.

Q. Okay. You said you lay him down on the grass?

13

A. Correct.

Q. That was the grass in his front yard?

A. Correct.

Q. How did you lay him down?

A. On his stomach?

Q. Okay. I mean you took him down?

A. I didn't take him down hard, no. We laid him down. We didn't slam him to the ground. We placed him on the ground.

Q. Okay. And you had one arm; Fontenot had the other arm?

A. Correct.

Q. Where was sergeant Ory?

A. He was behind us. During the resistance, he had grabbed Mr. Lafluer's leg to keep him from spinning over.

Q. After he was on the ground, he grabbed his legs?

A. Correct.

Q. At what point did Mr. Lafleur tell you he hurt his leg?

A. During the struggle while we were trying to handcuff him was the first time that I heard him say - - it - - it was his knee. "My knee," was what he said.[35]

First, the court finds that there is a factual dispute as to whether or not Mr. LaFleur was actually being arrested at the time he was injured. Mr. LaFleur claims that the officers approached him and tackled him without telling him he was being placed under arrest, and that three of them

---

[35] R. #24-14, Lognion depo., pp. 24-26.

forced or tackled him to the ground. Deputy Lognion claims that the officers laid or placed him on the ground after they told Mr. LaFleur he was being arrested for disturbing the peace. The court notes that no one disputes the fact that Mr. LaFleur's injuries occurred while he was either "placed" or "tackled" to the ground. Thus, we find that there is a factual dispute as to when Mr. LaFleur was actually placed under arrest and when he actually "resisted" the arrest. Thus, there is a genuine issue of material fact for trial as to whether Mr. LaFleur was assaulted and/or battered prior to being placed under arrest. Furthermore, we find that even though Mr. LaFleur's conviction may in fact be final (because the appeal delay had expired and presumably the Third Circuit Court of Appeal will summarily dismiss the writ as untimely), and/or plaintiff has failed to establish that the conviction was reversed, Heck is not applicable to the facts of this case because we conclude that a finding is possible that the police used excessive force to subdue a criminal defendant which can coexist with a conviction of a criminal defendant for resisting arrest.

The state law claims for assault and battery based on Louisiana Civil Code article 2315 will remain for decision following the trial on the merits.

## CONCLUSION

Based on the foregoing and for the reasons set forth herein, the motion for partial summary judgment will be granted to the extent that the section 1983 claims against Sheriff Tony Mancuso will be dismissed with prejudice and Officer L. Melendy will be dismissed with prejudice; otherwise, the motion for summary judgment will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2nd day of November, 2011.

15

                                                          _____
                                                          JAMES T. TRIMBLE, JR.
                                                          UNITED STATES DISTRICT JUDGE